IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| J.B., a minor child, by and through his next friend, ADDIE WARD, on Behalf of himself and all others similarly situated; | * * * * * | |
| Plaintiff, | * | |
| vs. | * * | CIVIL ACTION NO. 2:06cv755-MHT |
| WALTER WOOD, in his individual capacity, | * * * | |
| Defendant. | * | |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiff J.B. states the following in support of his motion for class certification.

## INTRODUCTION

This case involves the failure of defendant to provide timely placement, treatment and services to juveniles committed to the Alabama Department of Youth Services. The case is based upon two distinct and separate legal theories, neither dependent on the other. The first is the defendant's conduct in relation to the unreasonable delay in placement, treatment and services subsequent to a juvenile's commitment to the Alabama Department of Youth Services, the same being a violation of due process rights under the Fourteenth Amendment to the Constitution of the United States. The second is the defendant's failure to comply with state law regarding the placement of committed juveniles.

The issues raised in this lawsuit have been litigated in at least three prior lawsuits. First raised in *AW v. Dupree,* Civ. Action No. 92-H-104N, subsequently raised in *SS v. Wood,* Civ. Action No. 01-M-224N, and in *A.G. v Wood,* Civ. Action No. 02-A-182N, the conduct of the defendant has not abated and juveniles committed to DYS have and continue to remain in detention facilities pending DYS placement in violation of state law and the U.S. Constitution.   Despite attempts to resolve the issue, the Defendant has continuously caused minors to be held in excess of (7) seven days without appropriate treatment and services.

## II. **FACTS**

On or about April 4, 2006, J.B., pursuant to an Order issued by the Montgomery County Juvenile Court, was committed to the custody of the Alabama Department of Youth Services. Pending placement by Department of Youth Services, plaintiff was detained in the Montgomery County Juvenile Detention Facility for 35 days. While detained, plaintiff received no services, treatment or rehabilitative services. Plaintiff remained in the detention facility until on or about May 9, 2006, when he was placed by Department of Youth Services.

Pursuant to §§ 12-151-61(c) and 12-15-71 (j), Code of Alabama, a juvenile is to be placed within seven (7) days from Notice of Disposition or Court Order to the custody of the Alabama Department of Youth Services.

[In the case of *A.G. v Wood,* Judge Albritton, in his Memorandum Opinion and Order found in regard to the unreasonable delay in the placement of detained youth that]

> "In this case, the question is more squarely presented since, when taken in conjunction with Judge Hobbs' later

decision in <u>A.W.</u> in ruling that the Department of Youth Services was in contempt of the consent decree, it was clear that a finding was made that the delay beyond seven days was an unreasonable delay and, therefore, a constitutional violation." (Exhibit "A", page seven, para. 2 of attached Order)

In the case of *S.S. v. Wood,* defendant Walter Wood agreed that within nine months of settlement approval, committed youth would be placed in compliance with state law. (Settlement Agreement at paragraph 4)The Court approved the settlement on March 12, 2002.


### III. ARGUMENT

Rule 23(a) Fed. R. Civ. P. provides that one or more members of a class may sue as representative parties if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representatives will fairly and adequately protect the interests of the class. These prerequisites to class certification are often referred to as numerosity, commonality, typicality and adequacy of representation. The cases recognize that commonality, typicality and adequacy of representation tend to merge. The real question being whether the named plaintiff's claims are similar to the rest of the class, and can forcefully represent those interests. <u>Andrews v. American Tel. & Tel. Co.</u>, 95 F.3d 1014, 1022-23 (11th Cir. 1996).

### A. NUMEROSITY

Rule 23(a)(1) Fed. R. Civ. P. only requires that the class be so numerous

that joinder of all members is "impracticable, and impracticable does not mean impossible, only the difficulty or inconvenience of joining all members of the class. See, D.W. by M.J. on Behalf of D.W. v Poundstone, 165 F.R. D. 661 (M.D. Ala. 1996); Bradley v. Harrelson, 151 F.R.D. 422 (M.D. Ala. 1993).

The standard for numerosity is whether joinder is "impracticable". Fed. R. Civ. P. 23(a)(1). This does not, however, mean that the numerosity requirement is overly burdensome. Newberg on Class Actions states that where a class numbers in the hundreds, joinder is impracticable, but in most cases, the number that will satisfy the Rule 23(a)(1) prerequisites should be much lower. Newberg on Class Actions, Ch. 3, p. 25 (3d ed. 1992).

Since January 1, 2003, the number of juveniles committed to Department of Youth Services who remained in detention facilities for seven days or longer from the date of commitment is at least 661. This number has been determined from preliminary examination of the partial response from the defendant to plaintiff's first request for production. Exhibit "B" attached hereto and incorporated by reference is the first and last pages, Bates stamped (0001-0661), of letters sent by the defendant to various juvenile judges in Alabama identifying and referencing juveniles committed to Department of Youth Services who have been in detention, awaiting placement for at least twenty-five (25) days from notice of commitment. Because these letters were only sent for juveniles awaiting placement for at least 25 days, the number of juveniles waiting longer than seven days is presumable much higher.

Even if the class in this case were not so plainly laid out, the law is that

neither exact class size nor identification is necessary for class certification. In Evans v. United States Pipe and Foundry, 696 F. 2d 925, 930 (11th Cir. 1983), the Eleventh Circuit held that "a plaintiff need not show the precise number of members in the class."

The evidence submitted by the Plaintiff clearly meets, and exceeds, the numerosity test.

### B. COMMONALITY

Rule 23(a)(2) Fed. R. Civ. P. requires that there be either questions of law or fact common to the class. The commonality requirement is "not high." Morris v. Transouth Fin. Corp., 175 F.R.D. 694, 697 (M.D. Ala. 1997). The rule is satisfied, therefore, even if there are factual discrepancies, and even if there are individual differences in damages. Id. at 697.

The legal theory in this case is that: (1) plaintiff was not placed within seven days of commitment to the Alabama Department of Youth Services; (2) plaintiff was not placed within a reasonable time subsequent to commitment to Department of Youth Services; (3) state law requires the placement of juveniles within seven days of commitment; (4) the unreasonable delay in placement of committed youth is unconstitutional. Each one of these questions is common to the class, satisfying the requirements of Fed. R. Civ. P. 23(a)(2)

### C. TYPICALITY

Rule 23(a)(3) Fed. R. Civ. P. requires the "the claims or defenses of the representative parties be typical of the claims or defenses of the class." While the second and third prerequisites, commonality and typicality, tend to merge,

typicality refers more to the characteristics of the named representative in relation to the class. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157-58 n.13 (1982); Piazza v. EBSCO Indus., Inc., 273 F. 3d 1341, 1346 (11th Cir. 2001). There must simply be nexus between the class representative's claims or defenses and the common questions or fact or law which unite the class. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir. 1984) A sufficient nexus is established if the claims or defenses of the class and class representative arise from the same event or pattern and are based on the same legal theory. Id. at 1337.

Plaintiff J.B. was not placed within a reasonable time or within seven days of commitment to the Alabama Department of Youth Services. This claim is typical, if not identical, to members of the class.

## D. ADEQUACY OF REPRESENTATION

Rule 23 (a)(4) Fed. R. Civ. P. requires the named plaintiff to fairly and adequately protect the members of the class. Adequate representation presents two questions; (1) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation; and (2) whether the plaintiff has interests that are antagonistic to the class. Griffin v. Carlin, 755F.2d 1216, 1533 (11th Cir. 1985)

In recognition of the fact that class representatives will not always grasp the intricacies of a complex action, the adequacy prong is properly focused on the capabilities of plaintiff's counsel to vigorously prosecute the class claims. "[T]he single most important factor considered by the courts in determining the

quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 Newberg on Class Actions 3d (1992) §3.24 at 3-133 n.353. "In reaching a determination concerning vigorous prosecution of the action on behalf of the class, courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." Id. at 3-134.

Here, there is no real question that plaintiff's counsel are adequately qualified to pursue this case. The claims and issues present in this litigation have been litigated in the United States District Court for the Middle District of Alabama no less than three times, and plaintiff's counsel has been the lead attorney in all three cases. A.W. was certified as a class action, as was D.W. v Poundstone 165 F.R.D 661 (M.D. Ala. 1996). [Counsel herein was certified as class counsel in both cases] Further, the firm of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. has vast experience in complex litigation and in the administration and management of class actions.

Finally, the class representative and purported class members bring identical claims against the defendant and therefore there is no antagonism between the representative and the class members.

### E. RULE 23 ADDITIONAL ELEMENT

Rule 23 Fed. R. Civ. P. also requires that at least one prerequisite of Rule 23(b) be satisfied to achieve class certification. The plaintiff seeks certification under Rule 23(b)(3) Fed. R. Civ. P., which means the additional factor the plaintiff must prove is that: The questions of law or fact common to the class

predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Factors which enter into this include: (1) the interests of individuals in controlling their own case, (2) the extent of any pre-existing litigation, (3) the desirability of concentrating in one forum, and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Stated another way, in a 23(b)(3) class, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997)

The "predominance" issue is not difficult . As the Fifth Circuit has opined "In order to 'predominate', common issues must constitute a significant part of the individual cases." Jenkins v. Raymark Industries, Inc., 782 F. 2d 468, 472 (5th Cir. 1986).

The issues to be decided in this case are overwhelmingly common issues. Those issues include whether the defendant failed to place plaintiff, and class members, within seven days of commitment to Department of Youth Services and whether the defendant failed to place plaintiff and class members within a reasonable time after commitment to Department of Youth Services.   The Eleventh Circuit states that "common issues of fact and law predominate if 'they have a direct impact on every class member's efforts to establish liability and on every class member's entitlement to injunctive and monetary relief.'" Klay v. Humana,382 F.3d 1241, 1255 (11th Cir. 2004) quoting Ingram v. Coca Cola, 200

F.R.D. 685, 699 (N.D. Ga. 2001).

In this case, the plaintiff will rely on the common fact that he and class members were not placed within seven days of commitment to the Alabama Department of Youth Services. Further, Plaintiff will rely upon the common legal theory that established law is violated by the failure to place plaintiff and class members within seven days. If each class member were to bring an individual action, they would still be required to prove the same alleged activities of the defendant to establish liability.

A class action is the superior method to adjudicate the claims when it will protect the rights of the class members who may lack the financial resources to bring the alleged wrongdoers to court. Anchem Prods., Inc. v. Windsor, 521 U. S. 591 (1997) The Court's focus is "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs. Klay 382 F.3d at 1269. The only other available form of litigation, establishing liability and seeking monetary relief, would be individual actions by class members. In this case, because common issues predominate over any individual issues, it would be difficult to argue that any alternative means of adjudicating these claims is available or desirable. Neither the parties nor the judicial system would benefit from the duplicative litigation which would result from the absence of a class action. "What would be unmanageable is the institution of numerous individual lawsuits." Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 189 (N.D. Ill. 1992).

This case presents a classic example of the superiority and efficiency of a class action weighing far greater than the maintenance of hundreds, if not thousands, of individual actions which would monopolize the resources of the court and the defendant. Maintenance of a class action suit would provide class members their "day in court" without overburdening the judicial system with a multiplicity of duplicative lawsuits.

Plaintiff's claim does not create significant concerns or insurmountable manageability issues. As referenced herein, the records of the Alabama Department of Youth Services provide convenient management of identification and notice issues and further provide accurate and detailed information regarding activities common to the class. The benefits of a class action adjudication are as great for the defendant as for the plaintiff. The defendant would be relieved of defending this action in multiple federal and state courts in Alabama. Additionally, a single forum is warranted and desirable because the core legal and factual issues which give rise to plaintiff's claims can be easily managed and adjudicated on a class wide basis by reference to a core set of documents and fact witness testimony. No other practical litigation alternative exists in light of the numerous common claims in this action. "[W]here a court has already made a finding that common issue predominate over individual issues, we would be hard pressed to conclude that a class action is less manageable than individual actions." Klay, 382 F.3d at 1273. Here, a class action is unquestionably the superior method of adjudication of this action.

## CONCLUSION

For the reasons set forth above, Plaintiff requests that this Court grant his Motion for Class Certification.

WHEREFORE THE PREMISES considered movant prays this Court grant the relief requested herein.

Filed on this the 5th day of March, 2007.

/s/Michael J. Crow
MICHAEL J. CROW (CR039)
Attorney for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

/s/Robert D. Drummond
ROBERT D. DRUMMOND (DRU004)
Attorney for Plaintiffs

OF COUNSEL:

Attorney at Law
323 De LaMare
Fairhope, AL 36532
(251) 990-6249

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of March, 2007 a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to T. Dudley Perry, P.O. Box 66, Mt. Meigs AL 36057 and Michael Crow, P.O. Box 4160, Mtg. AL 36103-4160.

/s/Robert D. Drummond, Jr.
OF COUNSEL

[ **FILED** ]

SEP 2 4 2002

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

A.G., a minor child, by and through her next )
friend, ~~██████████~~ on behalf of herself and )
all others similarly situated, )
                                 )
                  Plaintiff, )
                                 )
vs.                              )      CIVIL ACTION NO.  02-A-182-N
                                 )
WALTER WOOD, individually, )
and PATRICK PENDERGAST, individually, )
                                 )
                Defendants. )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

      This cause is before the court on a Motion to Dismiss Amended Complaint (Doc. #24)

filed by Defendants Walter Wood ("Wood") and Patrick Pendergast ("Pendergast") on June 17,

2002.

      The Plaintiff, A.G., a minor child, by and through her next friend, ~~███████~~

originally filed a Complaint in this case on February 14, 2002, bringing claims on her own behalf

and on the behalf of others similarly situated. Wood filed a Motion to Dismiss. After the court's

dismissal of the Complaint without prejudice by this court, the Plaintiff filed an Amended

Complaint. She brings claims for violation of the Fourteenth Amendment to the United States

Constitution under 42 U.S.C. § 1983 against Wood (Count I), violation of the Fourteenth

Amendment to the United States Constitution under 42 U.S.C. §1983 against Pendergast (Count

II), negligence against Wood (Count III), wantonness against Wood (Count IV), negligence

against Wood based on failure to supervise Pendergast (Count V), wantonness against Wood

based on failure to supervise Pendergast (Count VI), negligence against Pendergast (Count VII), and wantonness against the Defendants (Count VIII).

For the reasons to be discussed, the Motion to Dismiss is due to be DENIED.

## II. MOTION TO DISMISS STANDARD

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. Hishon, 467 U.S. at 73. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985).

## III. FACTS

The allegations of the Plaintiff's Complaint are as follows:

A.G. is a juvenile who was adjudicated delinquent and who was committed to the Alabama Department of Youth Services ("DYS"). Wood is the Director of DYS.

A.G. was committed to DYS on November 7, 2001, and was detained at the Baldwin County Juvenile Detention Center pending placement with DYS. The Plaintiff points to Alabama statutory provisions for the proposition that DYS shall accept committed youths within seven days from the date of notice of disposition or court order. The Plaintiff states that A.G.

2

was not accepted for placement until January 4, 2002. She further alleges that Wood closed

dormitories, failed to request all available funds, and adopted a policy of failing to place children

in compliance with state law, among other actions, which the Plaintiff alleges caused A.G. and

others to fail to be placed in a timely manner, in violation of the federal Constitution and state

law.

## IV. DISCUSSION

### 1. Federal Claims

The Defendants have moved to dismiss federal claims against them for failure to

adequately plead a claim and on the basis of sovereign and qualified immunities. The

Defendants argue that they are actually sued in their official capacities, and that such claims are

barred by the Eleventh Amendment. The Amended Complaint, however, explicitly states that

"Wood is sued in his individual capacity." Complaint at ¶ 3. A.G. also reiterates in her brief that

Wood and Pendergast are sued for damages in their individual capacities only. See Plaintiff's

Response at page 6.

The Defendants continue to assert, however, that regardless of how the Plaintiff has cast

her claims, the State is the real party in interest because the Plaintiff has sought money damages

which will be paid by the State. As the Plaintiff has reiterated that she is only bringing claims

against Wood and Pendergast in their individual capacities, the court cannot conclude that a

recasting of those claims as official capacity claims is appropriate. For purposes of resolving the

Motion to Dismiss, therefore, the court must conclude that Eleventh Amendment immunity is not

a proper basis for dismissal in this case.

The Defendants have also moved for dismissal of the claims against them in their

3

individual capacities on the basis of qualified immunity.[1]  Qualified immunity is a protection

designed to allow government officials to avoid the expense and disruption of trial. Ansley v.

Heinrich, 925 F.2d 1339, 1345 (11th Cir.1991).  Liability only attaches if "[t]he contours of the

right [violated are] sufficiently clear that a reasonable official would understand that what he is

doing violates that right." United States v. Lanier, 520 U.S. 259, 270 (1997).  In other words, a

defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional

right. Hope v. Pelzer, __ U.S. __, 122 S.Ct. 2508 (2002).  Officials can be on notice that their

conduct violates established law even in novel factual circumstances, although in some cases, a

very high degree of prior factual particularity may be necessary, such as when an earlier case

expressly leaves open whether a general rule applies to the particular type of conduct at issue. Id.

at 2516. When qualified immunity is asserted as a defense, a court must first determine whether

the violation of a constitutional right is asserted, then determine whether that right was clearly

established. See Wilson v. Layne, 526 U.S. 603, 609 (1999).

The Defendants have argued that the Plaintiff has failed to demonstrate that there was a

violation of a clearly established constitutional right which was committed by these Defendants

individually.  The Defendants' first argument is that there is no constitutional right to placement

within seven days. The Defendants state that the only violations alleged are violations of state

statutes, and a violation of a state statute cannot establish a violation of substantive due process,

citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994).

The Plaintiff responds that she does not contend that a violation of state statutes is a

---

[1] As the Defendants have not argued that the immunity defenses of Wood and Pendergast should be analyzed any differently, the court will analyze them together.

4

violation of her federal rights, but rather that there is a violation of her right to timely placement under the Fourteenth Amendment to the United States Constitution.

A violation of a state statute is not necessarily the equivalent of a federal Constitutional violation. See First Assembly of God of Naples, Florida, Inc. v. Collier County, Florida, 20 F.3d 419 (11th Cir. 1994). A violation of state-defined procedure can, however, also constitute a violation of federal due process. See Everett v. City of Tallahassee, 840 F. Supp. 1528 (N.D. Fla. 1992). In fact, that was the court's determination in A.W. v. Dupree, Civ. Action No. 92-H-104-N, Slip. Op. (M.D Ala. June 25, 1996)(Hobbs, J.). In A.W., the court concluded that the violation of a provision of an Interim Consent Order that evaluations be initiated within seven days, a recommendation be made within 14 days thereafter, and placement by the department without delay thereafter violates the Constitution because due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the juvenile is committed. Id. at *5.

The Defendants have argued that even assuming that there is a constitutional violation in this case, the claims against them are based on the actions of an institution, not upon their individual actions. It is certainly clear that there is no respondeat superior liability under § 1983. See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). A state official can be held liable in his individual capacity, however, if he personally instigates or adopts a policy that violates the plaintiff's constitutional rights. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176 (11th Cir. 1994). If a defendant is responsible for adopting policies or procedures, the policy or procedures must have been the cause of a violation of clearly established constitutional law to hold that defendant liable. Id. at 1194.

5

The Eleventh Circuit concluded in Hill that a director of youth services could not be held liable on the basis of policies and procedures because he did not have final decision making authority. Hill, 40 F.3d at 1194. Here, the Plaintiff has alleged that Wood had final decision making authority. Also, a constitutional deprivation can occur as a result of deliberate indifference. See H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086 (11th Cir.1986) (denial of medical care). The Plaintiff has also alleged that Wood and Pendergast were deliberately indifferent to her rights.

The question before the court, therefore, is if a constitutional violation is proven, whether that violation was clearly established. In response to the first Motion to Dismiss filed in this case, the Plaintiff pointed this court to orders by two judges from this district. The court noted at that time that decisions of the Supreme Court, Eleventh Circuit, or Alabama Supreme Court are generally the sources of law which are relevant to the qualified immunity inquiry. See D'Aguanno v. Gallagher, 50 F.3d 877, 881 n.6 (11th Cir. 1995).

In its recent decision, the Supreme Court appears to have broadened somewhat the scope of what can give a reasonable official fair warning that his actions are unconstitutional. In Hope, the Court looked to a regulation from the Alabama Department of Corrections which described procedures to be used while an inmate was shackled to a hitching post. The Court noted that provisions of the regulation were frequently ignored by the corrections officers. Id. at 2518. The Court reasoned that a course of conduct that tends to show that the requirements of the regulation were a sham, or that the defendants could ignore it with impunity, provides strong support for the conclusion that the defendants were fully aware of the wrongful character of their conduct. Id.

Under this reasoning, if proven, a violation of the state statute which sets out time limits

6

for placement and evaluation of juveniles could be said to perform a similar function and demonstrate that the officials knew that what they were doing was wrongful.

This court has also been pointed to a consent decree, now terminated, which once governed the actions of the Department of Youth Services specifically with regard to the timely placement rules. The Plaintiff's argument is that if the same conduct was once ruled unconstitutional, and was proscribed through a consent decree, even though that consent decree is no longer binding, it established that the conduct is unconstitutional in this case.

In Dolihite v. Maughon, 74 F.3d 1027, 1055 (11th Cir. 1996), the Eleventh Circuit expressly stated that it "need not address whether a consent decree can in other circumstances can clearly establish the constitutional law, because we hold in this case that . . . the Consent Decree . . . [has not] clearly established a constitutional right." In this case, the question is more squarely presented since, when taken in conjunction with Judge Hobbs' later decision in A.W. in ruling that the Department of Youth Services was in contempt of the consent decree, it was clear that a finding was made that the delay beyond seven days was an unreasonable delay and, therefore, a constitutional violation.

In Dolihite, the court cited to Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1982), a class action in which it was determined that prison conditions constituted cruel and unusual punishment. The Eleventh Circuit concluded that the determination that prison conditions were unconstitutional did not have a preclusive effect on claims against individual defendants. Id. at 1383. The court also determined, however, that the prior class action had a preclusive effect on the qualified immunity defense. Id. at 1385. The court held that, based upon the prior case, the defendants "are precluded from now asserting that they should not have known that failure to

7

meet the constitutional norms established in [the class action] would violate [the plaintiff's] constitutional rights." Id. at 1386. The court explained that this was not preclusion in the sense that the defense was earlier litigated, but the defense was precluded because of the court's clear delineation of the prisoner's rights. Id.

Similarly, in this case, DYS operated under a consent decree for many years, pursuant to which a judicial determination was made that unreasonable delay in placements of children violated the constitution. See A.W., Slip Op. at *5. The additional issue in this case, however, is the required degree of specificity of clearly established law. The Defendants have advanced the argument that these Defendants could not have known that the particular conduct in which they engaged violated the law. The Defendants state that the allegation that "no specific action was taken" is not based on any facts. The allegations of the Plaintiff's complaint include allegations, among others, that a policy of not placing children within a reasonable time was adopted, dormitories were shut down, and funds were not requested or allocated. Although the court does not have the former consent decree before it, there is no mention in the opinion which has been provided to the court of similar conduct.

The Defendants have argued that Hope merely adopts a sliding scale approach, so that as the level of egregiousness of the conduct increases, the specificity of the constitutional right increases, and the proximate cause increases, there is less need for specificity in the case law. Even accepting the Defendants' characterization of the "fair warning" standard, however, the Defendants have not established, for purposes of the Motion to Dismiss, that they are entitled to qualified immunity. The facts in the case have not yet been developed in order for the court to determine whether the egregiousness of the conduct or the degree of proximate cause

8

necessitates more or less specificity in the applicable case law. Accordingly, at this point in the proceedings, qualified immunity is due to be denied, without prejudice to the Defendants' ability to again raise this defense upon presentation of evidence at the summary judgment stage or at trial.

### 2. State Law Claims

The Defendants have also moved to dismiss the state law claims brought against them. The Defendants state that they are entitled to state agent immunity, relying on Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), wherein in the Alabama Supreme Court set forth categories of conduct sufficiently discretionary so as to fall within state agent immunity.

The Plaintiff relies on Ex parte Butts, 775 So.2d 173 (Ala. 2000) to argue that the Defendants are not protected by state agent immunity because they were not performing duties prescribed by statute. In Ex parte Butts, the Alabama Supreme Court held that although discretionary function immunity generally applies to allocating resources and discharging duties imposed by statute, if an employee fails to discharge duties pursuant to detailed rules or regulations, or acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law, a plaintiff may possibly prevail on their claims, and discretionary function immunity is properly denied. Id. at 178.

As this court has previously noted, it is rare that a case involving state agent immunity will be disposed of on a motion to dismiss. See Hawkins v. City of Greenville, 101 F. Supp. 2d 1356, 1362 (M.D. Ala. 2000). As the Plaintiff has alleged that the Defendants violated statutory duties or acted under a misinterpretation of the law, dismissal of the state law claims is inappropriate.

9

The Defendants also argue that there is no implied or express cause of action against employees of DYS for violation of the Alabama statutory provisions to which the Plaintiff has pointed. While it may be that there is no private right of action for violation of the Alabama Code provisions pointed to by the Plaintiff, proof of those violations may at least be used as evidence to defeat a state agent immunity defense.

Accordingly, the court finds that the case is not due to be dismissed on the basis of discretionary function immunity, but that the Defendants are free to again raise this defense at the summary judgment stage or at trial.

## V. CONCLUSION

The case before the court does not lend itself to disposition on a Motion to Dismiss. It may ultimately be that one, or both, of the Defendants is entitled to qualified immunity as to the federal claims asserted against them, but without factual development of the claims at issue, the court is unable to make that determination at this time. Similarly, without factual development, the court is unable to properly evaluate the application of immunity principles to the state law claims. As earlier stated, the court's decision to deny the immunity defenses at this time is without prejudice to the Defendants raising these defenses at a later stage of the litigation.

Accordingly, for the reasons discussed, the Motion to Dismiss is ORDERED DENIED.

The Defendants are given until October 4, 2002 to file Answers to the Amended Complaint.

Done this 24th day of September, 2002.

W. HAROLD ALBRITTON
CHIEF UNITED STATES DISTRICT JUDGE

10

STATE OF ALABAMA

# DEPARTMENT OF YOUTH SERVICES

**BOB RILEY**
GOVERNOR

POST OFFICE BOX 66
MT. MEIGS, ALABAMA 36057
February 5, 2007

**J. WALTER WOOD, JR.**
EXECUTIVE DIRECTOR

Judge Phyllis J. Logsdon
Houston County Courthouse
P. O. Drawer 6406
Dothan, AL 36302

Subj: Non Placement Notification for

Dear Judge Logsdon:

    Our records indicate that the above named nonviolent commitment has been detained at least twenty-five days since notice of commitment was received by DYS. We would respectfully request that the court consider allowing this client to remain at home pending admission.

    Please contact the Office of Screening and Placement if we may provide you any additional information.

                    Sincerely,

                    *J. Walter Wood, Jr./AL*

                    J. Walter Wood, Jr.
                    Executive Director
                    Department of Youth Services

*Awaiting bed Autauga HIT followed by drug treatment.*

FEB - 5 2007



T000





DON SIEGELMAN
GOVERNOR

*State of Alabama*

*Department of Youth Services*

*Post Office Box 66*
*Mt. Meigs, Alabama 36057*

J. WALTER WOOD, JR.
EXECUTIVE DIRECTOR

January 2, 2003

Judge Andra Sparks
Family Court Courthouse
120 Second Court North
Birmingham, AL -35204

Subj: Non Placement Notification for I

Dear Judge Sparks:

Our records indicate that the above named nonviolent commitment has been detained at least twenty-five days since notice of commitment was received by DYS. We would respectfully request that the court consider allowing this client to remain at home pending admission.

Please contact the Office of Screening and Placement if we may provide you any additional information.

Sincerely,

*J. Walter Wood, Jr.*
J. Walter Wood, Jr.
Executive Director
Department of Youth Services

