IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
J.B., a minor child, by and )
through his next friend,    )
Addie Ward, on behalf of    )
himself and all others      )
similarly situated,         )
                            )
    Plaintiff,              )
                            )      CIVIL ACTION NO.
    v.                      )       2:06cv755-MHT
                            )          (WO)
WALTER WOOD, in his         )
individual capacity,        )
                            )
    Defendant.              )


J.B., a minor child, by and )
through his next friend,    )
Addie Ward, on behalf of    )
himself and all others      )
similarly situated,         )
                            )
    Plaintiff,              )
                            )      CIVIL ACTION NO.
    v.                      )       2:06cv908-MHT
                            )          (WO)
WALTER WOOD, in his         )
individual capacity,        )
                            )
    Defendant.              )
```

OPINION AND ORDER

Plaintiff J.B., a minor child, brings this civil action by and through his next friend and great-grandmother, Addie Ward.  J.B. claims that when he was detained by court order in a county youth facility pending placement by the Alabama Department of Youth Services (DYS), he was denied his right under the due process clause of the Fourteenth Amendment that such placement take place within a reasonable period of time.  He also brings common-law claims of negligence and wantonness based on the state-law requirement that DYS "accept all children committed to it within seven days of notice of disposition."  1975 Ala. Code § 12-15-61(c); see also id. § 12-15-71(j).  J.B. has sued for money damages, naming Walter Wood, the director of DYS, in his individual capacity as defendant.

J.B. seeks to pursue his claims as a class action, and this case is now before the court on his motion for class certification.  The proposed class is all persons committed to DYS who remained in a detention facility for

2

longer than seven days before placement and whose claims are not barred by the applicable statute of limitations. For the reasons that follow, class certification will be denied.

## I. CLASS-CERTIFICATION STANDARD

"Rule 23 [of the Federal Rules of Civil Procedure] establishes the legal roadmap courts must follow when determining whether class certification is appropriate." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003). The party seeking to maintain the class action bears the burden of demonstrating that all the requirements of Rule 23 have been met. Id.

"A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted).[1] Failure

---

1. The prerequisites to a class action are as follows:

(continued...)

1.    (...continued)
&ldquo;One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.&rdquo;

Fed. R. Civ. P. 23(a).

The three types of class actions maintainable are as follows:

&ldquo;(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

&ldquo;(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class,

(continued...)

4

to establish any one of the four prerequisites under Rule 23(a) and at least one of the alternative requirements of Rule 23(b) precludes class certification.  <u>Valley Drug</u>, 350 F.3d at 1188 (citing <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 615-18 (1997)).

The court's role at the class-certification stage is not to determine the merits of the case, but rather to

---

1.    (...continued)
thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Fed. R. Civ. P. 23(b).

determine whether the purported class representative satisfies the procedural requirements for class certification. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). However, "the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug, 350 F.3d at 1188 n.15; see also Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982) ("sometimes it may be necessary for the court to probe behind the pleadings"); Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004); Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1343 (11th Cir. 2000).

## II. FACTUAL BACKGROUND

The evidence submitted in connection with the motion for class certification reflects the following facts. On April 4, 2006, J.B., then 16, was committed to the custody of DYS by order of the Juvenile Court of Montgomery County. The stated mission of DYS is to enhance public safety by holding juvenile offenders accountable through

6

the use of institutional, educational, and community services that balance the rights and needs of victims, communities, courts, and offenders. Pending transfer to DYS, the court ordered that J.B. be detained at the Montgomery County Youth Facility. State law requires DYS to "accept all children committed to it within seven days of notice of disposition." 1975 Ala. Code § 12-15-61(c); see also id. §§ 12-15-61(d) & -71(j). However, J.B.'s detention at the youth facility persisted for 35 days, until May 10, 2006.


                        III. DISCUSSION

      In this case, J.B. seeks to maintain a class action under Rule 23(b)(3). As stated, failure to establish any one of the four prerequisites under Rule 23(a) and at least one of the alternative requirements of Rule 23(b) precludes class certification. Valley Drug, 350 F.3d at 1188 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615-18 (1997)). It is therefore appropriate to advance immediately to the requirement under Rule 23 that J.B.

                            7

cannot satisfy: that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."    Fed. R. Civ. P. 23(b)(3).

Where, as here, a party seeks to maintain a class under Rule 23(b)(3), "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." <u>Nichols v. Mobile Bd. of Realtors, Inc.</u>, 675 F.2d 671, 676 (5th Cir. Unit B May 10, 1982).[2]  Although there is no bright-line test for determining whether common questions predominate, it is generally accepted that the predominance requirement is satisfied if there is a common issue as to liability, even if damages are individual issues.  5 James Wm. Moore, <u>Moore's Federal Practice</u> § 23.45[1]-[2] (3d ed. 2006).  Conversely, "if each class

_____

    2.  In <u>Stein v. Reynolds Securities, Inc.</u>, 667 F.2d 33 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

member's claim would necessitate an individualized
determination of liability," id. § 23.23[2], then common
questions generally do not predominate.

Here, the predominance requirement is not met because
the court believes that individualized determinations of
liability will be required in order to adjudicate each
class member's claim. J.B.'s central federal claim is
based on "the unreasonable delay in placement, treatment
and services subsequent to a juvenile's commitment to the
Alabama Department of Youth Services." Pl. Br. (doc. no.
20-1) at 1; see also id. at 5 ("The legal theory in this
case is that ... plaintiff was not placed within a
reasonable time...."); Compl. at 6 ("The overriding legal
issue in this case is the ... unreasonable deprivation of
liberty...."). When the factfinder must make findings as
to reasonableness, individualized considerations are
frequently paramount--not simply as to damages, but to
liability as well.

DYS Director Wood has produced unrebutted evidence
that the placement process for juveniles committed to DYS

custody involves individualized assessments of each
juvenile. See Pendergast Aff., Def. Ex. 9 (doc. no. 27-4)
at 3 ("When a child is committed to DYS custody, the
Screening and Placement Committee meets and reviews the
child's characteristics to determine where the child would
most appropriately be staffed."). DYS classifies
committed juveniles into one or more of six different
categories. There are approximately 30 placement
locations available, each suited for different needs. Not
all locations have vacancies at any given time, however,
and placement is often delayed until a bed becomes
available, depending upon the needs of individual
juveniles and the availability of DYS facilities.

The evidence therefore reflects that in the case of
any individual juvenile committed to DYS custody but not
placed within seven days, the reason such placement has
not occurred in a more timely fashion depends on the facts
and circumstances of that particular case and is therefore
individualized in nature. That is to say, J.B. has
produced no evidence to suggest that DYS has an across-

10

the-board <u>policy</u> of not placing juveniles within a certain amount of time.  Instead, a jury called upon to determine whether a placement delay was "reasonable" would be required to evaluate the totality of the circumstances surrounding each delay.

The Eleventh Circuit Court of Appeals has stated that 23(b)(3) class actions cannot be maintained where liability determinations require individualized assessments of each class member's claim.  In <u>Kerr v. City of West Palm Beach</u>, 875 F.2d 1546, 1557-58 (11th Cir. 1989), the Eleventh Circuit held that the district court did not err in refusing to certify a class action where the plaintiffs challenged the police department's aggressive use of canine units.  The plaintiffs claimed that the policies of the police department's canine unit were unconstitutional <u>per se</u> as excessive force under the Fourth and Fourteenth Amendments.  875 F.2d at 1548.  The appellate court rejected the plaintiffs' per-se theory, noting that excessive-force claims are not amenable to an "assessment of the abstract constitutionality of

11

government policies," but instead must be considered "in light of the unique factual circumstances in which the police acted." Id. at 1554. Accordingly, because "the federal courts must assess the reasonableness of the officer's actions in light of the essentially unique factual circumstances accompanying the arrest" and "[s]uch determinations cannot be made en masse[,] ... such suits therefore are especially unsuited to class disposition." Id. at 1558.

In this case, J.B.'s claim is subject to analysis along the same lines. Whether the delay in his placement was unreasonable, and indeed whether the delay in each class member's placement was unreasonable, may well depend on circumstances unique to each individual juvenile. Because such determinations cannot be made en masse, their claims do not meet the predominance requirement of Rule 23(b)(3).

J.B. argues that common questions predominate because of the common fact that the putative class members remained in pre-placement detention for longer than seven

days and the common legal theory that DYS's failure to place them within seven days violates the law. But the mere fact that DYS did not place putative class members within seven days as required by state law does not satisfy the predominance inquiry where the central question of liability is an individualized reasonableness inquiry under federal law. There is no federal cause of action for a violation of state law, and a violation of state law is not, in itself, a violation of the federal due process clause. Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002). Therefore, even though there are common questions of fact and state law, see Fed. R. Civ. P. 23(a)(2), these issues do not predominate over questions affecting individual members of the putative class, Fed. R. Civ. P. 23(b)(3).

Of course, it is theoretically possible that, unlike in Kerr, this case does present a question of the per se unconstitutionality of a government policy. That is, J.B. might wish to pursue the legal theory that, regardless of individual circumstances, DYS's failure to place a

13

juvenile within seven days of a commitment order is <u>per se</u> unconstitutional. If this theory were correct, then admittedly common questions would predominate over individual issues. However, the court declines to recognize predominance under such a dubious legal theory. Although the court is discouraged from delving into the merits of a claim during the class-certification stage, it may do so in order to determine whether the requirements of Rule 23 have been satisfied. <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 713 (11th Cir. 2004). The court estimates that the probability of success on the merits of a per-se reasonableness legal theory is low, <u>especially</u> relative to the merits of a case-by-case reasonableness theory. The court has a responsibility to ensure that a class representative "fairly and adequately protects the interests of the class," Fed. R. Civ. P. 23(a)(4), and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," Fed. R. Civ. P. 23(b)(3). If J.B. were entrusted to pursue a tenuous legal theory on behalf of a

14

class whose members' claims would almost certainly be more likely to succeed if brought as individual actions, then the court would fail in its independent obligation to ensure that the individual class members' interests are adequately protected.

In sum, questions of law or fact common to the members of the class do not predominate over questions affecting only individual members. Even if J.B. were to pursue a legal theory under which common questions would predominate, doing so would not fairly and adequately protect the interests of the class. For these reasons, a class action is not superior to other available methods for the fair and efficient adjudication of this controversy.

Accordingly, it is ORDERED that plaintiff J.B.'s motion for class certification (doc. no. 21) is denied.

DONE, this the 30th day of May, 2007.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

                                                              Rev.: 4/04

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).