IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **J.B., a minor child, by and through his next friend, ADDIE WARD, on behalf of himself and all others similarly situated;** | * * * * * | |
| **Plaintiff,** | * | |
| **vs.** | * | **CASE NO:02:06cv755-MHT** |
| | * * | |
| **WALTER WOOD, in his individual capacity,** | * * * | |
| **Defendant.** | * | |
| | | |
| **J.B., a minor child, by and through his next friend, ADDIE WARD, on behalf of himself and all others similarly situated;** | * * * * * | |
| **Plaintiff,** | * | |
| **vs.** | * | **CASE NO:02:06cv908-MEF** |
| | * * | |
| **WALTER WOOD, in his individual capacity,** | * * * | |
| **Defendant.** | * | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO STRIKE**

COMES NOW the plaintiff, by and through counsel, and states as follows:

1.    The court directed submission of briefs, on or before December 14, 2007, regarding the Motion to Strike or in the alternative leave to respond to the submission of defendant's supplemental evidentiary material, namely the affidavit and attachments of

Danielle Lipow.

2. At the pretrial conference, the parties agreed to a liability resolution based upon the evidence already before the court, with the directive that additional evidence or briefs could be submitted by November 16, 2007.

3. On or about November 16, 2007 the defendant filed his motion to supplement the record, which included the affidavit and attachments thereto of Danielle Lipow.

4. The motion to supplement, regardless of context, must be viewed as evidence considered for admission at trial or which otherwise complies with directives from the court. Under no scenario, absent leave of court, would the testimony of Danielle Lipow or evidentiary material made a part of her affidavit have been admitted by the court based on the following.

### UNTIMELINESS

At the outset, the defendant can not dispute the affiant was not timely submitted as a potential expert witness nor as a witness generally. And the defendant did not and has not requested of the court leave to allow supplementation of his witness list nor expert witnesses.

The deadline for the filing of expert witnesses was set forth in the Scheduling Order, document 15. The defendant did not submit the name(s) of any expert witnesses. On August 22, 2007 the defendant submitted his witness list, document 65, wherein the name of Danielle Lipow does not appear.

For this reason alone, the affidavit and attachments are due to be stricken.

### LACK OF PERSONAL KNOWLEDGE

The affiant does not assert having personal knowledge of the facts upon which the

lawsuit is based. Affiant declares she has reviewed the pleadings and the record, presumably meaning she has read the non-sealed and non-confidential portions of the clerk's file. Because the defendant did not submit affiant as an expert witness, the plaintiff can only presume the statutorily protected confidentiality of his juvenile and DYS records has not been compromised.

For this reason alone, the affidavit is due to be stricken.

## RELEVANCE

While the affiant has no personal knowledge regarding the facts at issue, the relevance of those facts to which she does have personal knowledge is due to be considered.

The affiant asserts her affidavit is submitted to provide evidence relevant to four material issues. While the four identified issues are material to the plight of children committed to DYS in the future,  none of the four are material to the dispositive issues in this case.

1. *A large majority of  children confined in detention centers and DYS facilities in Alabama are non-violent and pose no threat to public safety.*

Because this issue is not material to the disposition of the issues before the court, no evidence offered by affiant is relevant to the disposition of plaintiff's claims. However, plaintiff acknowledges that the mechanisms utilized to determine risk and consideration of and placement in least restrictive environments are fundamentally flawed in both concept and implementation and that all efforts should be made at the judicial, legislative and administrative levels to address and remedy the same.

2. *A growing body of research and scholarship has demonstrated that the*

*experience of institutionalization is damaging to children and may actually increase the*

*likelihood that a child will break the law.*

Because this issue is not material to the disposition of the issues before the court,

no evidence offered by affiant is relevant to the disposition of plaintiff's claims.

However, plaintiff acknowledges that for a myriad of reasons, including deficient

evaluations and services, the institutionalization of children is detrimental and the effects

are exponentially exacerbated when the institutionalization occurs in the absence of

meaningful individualized treatment and rehabilitation opportunities. Ironically, affiant's

statement supports plaintiff's position that time in detention awaiting placement is

detrimental.

3. *Previous litigation against DYS on this issue has driven significant expansion*

*in residential capacity  at DYS. As a result of these expansions, Alabama now has one of*

*the most institutional-based systems in the country. A finding of liability in this case is*

*likely to create incentives to further expand capacity draining public resources that could*

*otherwise be invested in non-residential interventions that are proven to reduce crime*

*and help children and families succeed.*

Because this issue is not material to the disposition of the issues before the court,

no evidence offered by affiant is relevant to the disposition of plaintiff's claims.

However, plaintiff acknowledges that affiant enumerates an issue which will only be

resolved when  legislative, administrative and judicial juvenile justice interventions are

premised upon providing more than lip-service to the concept of "best interests of the

child." The reality is that while affiant focuses on the residential capacity of DYS, the

number of children needing services pursuant to adjudication is the truly important

number, because, regardless of the entity providing the services, be it DYS, mental health, DHR, education, local programs or private providers, whatever the number of children, services must be provided. This litigation has no impact upon the number of delinquency petitions filed and adjudications therefrom, but only that children are not held in detention awaiting services in violation of state law or the U.S. Constitution. Moreover, affiant asserts residential capacity has increased due to previous litigation on this issue. However, the increase in residential capacity has come in the form of drug treatment beds, group homes, wilderness programs, etc., not in institutions and is premised upon AW provisions requiring rehabilitative opportunities based on need, not availability. Had an increase not occurred during the AW years, DYS committed children would continue to remain in local detention facilities for months without services and once placed at DYS facilities children would be warehoused with limited services.

4. *In partnership with Governor Bob Riley and the Annie E. Casey foundation, the Defendant is presently engaged in a comprehensive systems reform effort aimed at reducing juvenile incarceration statewide. That reform effort began in 2005.*

Because this issue is not material to the disposition of the issues before the court, no evidence offered by affiant is relevant to the disposition of plaintiff's claims.

However, plaintiff acknowledges that efforts utilizing the experience and resources of the Casey Foundation could allow children to receive needed services in a timely manner either within the DYS system or alternatives thereto.

## SUBSTANTIVE MERIT

The substance of defendant's motion to supplement, namely the Lipow affidavit, is without merit relating to the issues before the court. Affiant believes this litigation

concerns the defendant failing to **incarcerate** J.B in DYS facilities in a timely manner.

This belief is not only erroneous, it lacks an understanding of the statutory purpose,

mandate, duties, rights and responsibilities of DYS and the role DYS plays within the

Alabama Juvenile Justice System.

This litigation concerns only a child committed to DYS and his claim that the

defendant failed to provide appropriate placement and services in the timely manner.

Affiant incorrectly assumes placement means incarceration. Affiant further mistakenly

concludes that all DYS facilities are institutions. Because affiant incorrectly characterizes

these points, the substance of her otherwise informative discussion on reform efforts in

the juvenile system must be put into context.

Affiant articulates a credible concern relating to DYS capacity, the concern being:

build it and they will come. While the dynamics of this concern involve all Alabama

agencies providing services to children, the fundamental concept that must be addressed

initially is the number of children adjudicated delinquent and the services necessary to

address that delinquency.  While defendant and affiant can bemoan the number of

children committed to DYS, neither this litigation, the actions of counsel or this court can

determine the number of delinquency petitions filed within this state and the number of

adjudications therefrom. Therefore, the issue becomes: what are the dispositional options

for local courts upon a delinquency adjudication?

Prior to A.W., the options available to courts were very limited, basically

probation or DYS. There was no spectrum of care or services. Either services could be

provided locally, with a child being on probation or commitment to DYS for services.

Prior to AW, the services available to DYS youth were extremely limited. Only as a result

of AW was DYS forced to adhere to its statutory mandate to study and evaluate children and then provide services that were needed.

Therefore, while affiant is correct that capacity increased as a result of AW, the increase did not come in the form of institutions, it came in the form of non-institutional programs. Prior to AW, the number of DYS private providers could be counted on one hand. Today, there are more than twenty, providing specialized services ranging from drug treatment to mental health.

Affiant declares that many of these children could be served in their local communities. Plaintiff absolutely agrees. Obviously, if appropriate programs existed at the local level, juvenile court judges would direct placement therein. Judges do not make those placements because they do not exist or the funding to place is not available. Increases in the last ten years in the number of local programs are the direct result of DYS directing its resources in the form of grants, partnerships and subsidies. The funding for these ventures is a direct result of AW and the previous litigation on this issue.

Because DYS is the state mechanism to provide services to adjudicated delinquent youth, absent statutory adjustment and/or direct legislative funding to local entities, adjudicated youth will continue to be committed to DYS for services when a juvenile judge so determines. While this lawsuit may have the result of ensuring that when a court commits a detained child to DYS, that DYS makes an appropriate placement in a manner consistent with state law and the U.S. Constitution, this lawsuit seeks only damages as a result of the defendant failing to do so regarding J.B.

Submitted on this the 14th day of December, 2004.


<div style="margin-left:50%">

s//Robert D. Drummond, Jr.
Robert D. Drummond, Jr. (DRU004)
Attorney for the Plaintiff
ASB-4619-O78R
323 De La Mare Ave.
Fairhope, AL
251-990-6249
fax:251-650-1264

s//Michael J. Crow
Michael J. Crow (CRO039)
Attorney for the Plaintiff
BEASLEY. ALLEN, CROW,
METHVIN, PORTIS &MILES
P.O. 4160
Montgomery, AL 36103-4160
334-269-2343

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2007, the foregoing was electronically filed with the Clerk of this Court thereby providing notice to counsel for the defendant, T. Dudley Perry, Esq.


<div style="margin-left:50%">

s//Robert D. Drummond, Jr.

</div>